Tyrone Willard BROWNLEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–00273–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 10, 1997.

**464**

James A. Leitner, Houston, for appellant.

Rikki Burke Graber, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Tyrone Willard Brownlee appeals his conviction by a jury for murder. The jury assessed his punishment at life imprisonment and a $10,000.00 fine, enhanced by one prior felony conviction. In four points of error, appellant contends: (1) the trial court erred in admitting appellant's statements to a court-appointed psychiatrist on cross-examination by the state; (2) the trial court erred in allowing the state to cross-examine appellant about statements he made to police officers because these statements were involuntary; (3) the trial court erred by not conducting a hearing on voluntariness of appellant's confession; (4) appellant received ineffective assistance of counsel. We affirm.

On December 28, 1992, appellant hired a cab driven by the victim, Larry Dean Gipson, to go shopping. Appellant testified at the guilt/innocence stage of his trial that Gipson started telling appellant he was "the devil" and he "had no right to be born." Gipson further told appellant he was "evil and stuff like that." Appellant testified he was angered and he blacked out and did not remember what happened. He testified that the cab bumped into another car and he looked up and saw Gipson slumped over with blood on him. Appellant then got out of the cab and walked into the Greenspoint Mall. Witnesses observed appellant in the cab, heard the gunshot, saw the cab window blow out, and saw the cab roll into a parked car. After the cab stopped, Valandra Matthews saw appellant lean across Gipson and dig through his pockets. Roman Rodriguez notified mall security that appellant had entered the mall. Police officers came to the scene and arrested appellant in the mall. A nine millimeter Stallard Arms automatic was recovered from the cab. Appellant testified he was carrying a gun. An expert testified that appellant's left hand tested positive for primer residues.

■ In point of error one, appellant contends the trial court erred by allowing the

prosecutor to cross-examine him regarding statements he made to a court-appointed psychiatrist during a competency examination. Appellant argues the state's questions violated article 46.02(3)(g), Texas Rules of Criminal Procedure, which provides:

No statement made by the defendant during the examination or hearing on his competency to stand trial may be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding.

On cross-examination, the state asked appellant two questions about statements he made to the psychiatrist during his examination concerning employment history and the fact he was suspended from school six times for fighting. Appellant agreed with the state that the psychiatrist had found him competent to stand trial and "any blackouts that [he] had seemed to be induced by alcohol."

■ Appellant did not object to the cross-examination by the state concerning his statements to the psychiatrist during his pre-trial competency and sanity examinations. Appellant argues *Perry v. State,* 703 S.W.2d 668, 671 (Tex.Crim.App.1986) is authority for his contention that no objection is required and article 46.02(3)(g) is a grant of use or testimonial immunity to any statement a defendant might make during a *competency* hearing (emphasis added). *Id.* at 671–72. Appellant is correct as to this assertion as to defendant's statements in a *competency* hearing *only.* In *DeRusse v. State,* 579 S.W.2d 224, 229–30 (Tex.Crim.App.1979), the court of criminal appeals held the prohibition of article *46.02* (3)(g), Texas Rules of Criminal Procedure, as to the use of a defendant's statements during his examination on his *competency* to stand trial does not apply "so as to forbid the trial use, relative to the *sanity defense* of the defendant's statements to the psychiatrist during a *combined competence/sanity examination* pursuant to article *46.03,* section 3(g) [Texas Code of Criminal Procedure]" (emphasis added). In this case, appellant was examined as to *both* his competency and sanity under article 46.03(3)(g), Texas Rules of Criminal Procedure. Accordingly, cross-examination of appellant by the state as to statements made by him to the court-appointed psychiatrist during his combined competence/sanity examination was proper. *DeRusse,* 579 S.W.2d at 230. *See also Ballew v. State,* 640 S.W.2d 237, 241 (Tex.Crim.App.1980). Appellant's point of error one is overruled.

■ In point of error two, appellant claims the trial court erred in allowing cross-examination of appellant concerning statements made to police officers after he was taken to the police station. Appellant argues the statements were involuntary because he asked for a lawyer before questioning and his request was denied. He further claims the confession was coerced because the officers told him he "was going to get the death penalty for capital murder" if he did not talk to them.

The state started to prove appellant's oral confession by the testimony of Sgt George Alderette and appellant objected on the grounds the officers had been put on notice of appellant's request for an attorney. The trial court conducted a *Jackson–Denno*[1] hearing on the voluntariness of appellant's confession, out of the presence of the jury, as required by section 6, article 38.22, Texas Code of Criminal Procedure. Sgt Alderette testified appellant did not ask for a lawyer prior to the taking of appellant's oral statement and recording it on a tape recorder. Sgt Alderette testified appellant "freely and voluntarily" made the statement to him and did not invoke his right to counsel during the taping of the statement. On cross-examination, Sgt Alderette testified he read appellant his *Miranda* warnings and appellant's trial counsel asked Sgt Alderette: "And he didn't want an attorney?" Sgt Alderette answered: "He said no. He said he understood them."

The only indication of appellant's request for a lawyer was a notation in Officer Cumbess' offense report that was discovered by Sgt Alderette two days after he took appellant's statement. After telling Officer Cumbess he wanted a lawyer, appellant never told another officer he wanted one. He told Sgt Alderette he understood his *Miranda* warnings and did not want a lawyer. Appellant

---

**1.** *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

did not ask for a lawyer during the taped confession nor did he ask that the interview be stopped. The state argued appellant waived his right to counsel under these circumstances.

In *Muniz v. State*, 851 S.W.2d 238, 253 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993), the court of criminal appeals held, in pertinent part:

> To establish a waiver, the State must demonstrate that the accused intentionally relinquished a right of which he was aware [citation omitted]. Whether a waiver is shown "must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused [citation omitted]." If the State's evidence shows nothing more than that the accused responded to further police-initiated custodial interrogation, a valid waiver is not shown. *Smith v. Illinois*, 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984).
>
> In *Smith*, the Supreme Court held that the State may not rely upon an accused's subsequent responses to police interrogation in order to cast doubt upon the adequacy of the accused's initial request for counsel. *Id.* at 100, 105 S.Ct. at 495. The Court expressly refused to decide, however, "the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself, nor ... the consequences of such ambiguity."

*Id.* at 253.

The record before the trial judge in this case indicates appellant did request an attorney but changed his mind and voluntarily withdrew his request when he was interviewed by Sgt Alderette. The record reveals that appellant has had many dealings with the police in the past and was well aware of his right to consult with counsel. Before appellant was questioned by Sgt Alderette, he was admonished of his rights to have a lawyer, his right to have a lawyer at anytime, and his right to terminate the interview at any time. He told Sgt Alderette he understood his rights and did not want a lawyer. He was asked during the taping of the confession if he wanted a lawyer and he expressly stated he did not want a lawyer. Under the "circumstances" of this case, we find appellant withdrew his request for an attorney and voluntarily gave his statement to Sgt Alderette. *Id.* at 253.

█ Appellant also argues his confession was involuntary because the police told appellant he would get the death penalty if he did not talk to them. Appellant did not identify the officers who told him he would get the death penalty nor did he state when it was during the arrest procedure the threat was made. Sgt Alderette testified that appellant freely and voluntarily gave his statement without any threats or coercion and did not request a termination of the interview. Appellant contends the state failed to controvert appellant's claim of coercion by any officer other than Sgt Alderette and the coercion may have come from other officers. The record shows appellant did not indicate which officers made the threat but only testified "*they* told me I was going to get the death penalty."

A similar contention was raised in *Barton v. State*, 605 S.W.2d 605, 607 (Tex.Crim.App. 1980). In *Barton*, appellant alleged Detective Carlan had intimidated him the night before he signed his confession by removing his eyeglasses and putting his foot on appellant's knee "in an intimidating manner" while the two were alone in the interrogation room. *Id.* at 606. The court of criminal appeals found: "Absent Detective Carlan's testimony, the testimony of someone present at the time of the alleged incident would have been sufficient to controvert the appellant's contention." *Id.* at 607. In this case, the only officers present before the taking of appellant's statement were Sgt Alderette, Officer Miller, and Officer Randolph. Officer Randolph left the other two officers before the statement was taped. Since Sgt Alderette was present "at the time of the alleged incident" (when "they" threatened appellant with the death penalty), his testimony that no threats or coercion were used before taking the confession would be "sufficient to contro-

vert the appellant's contention." *Id.* at 607–08.

■ Uncontroverted testimony of an accused that a confession was procured through coercive acts renders such confession inadmissible as a matter of law. *Barton*, 605 S.W.2d at 607. The determination of whether a confession is voluntary must be based upon examination of the totality of the circumstances surrounding its acquisition. *Id.* Since the trial judge is the trier of fact at a hearing on the voluntariness of a confession, he is the exclusive judge of credibility of witnesses as well as the weight to be afforded their testimony. *Id.* Appellate challenges to the trial court's determinations of fact or applications of law should be directed to whether the trial court abused its discretion. *Id.*

After the *Jackson–Denno* hearing in this case, the trial court found the confession to be voluntary and admissible for impeachment pursuant to article 38.22, section 5, Texas Code of Criminal Procedure, which provides, in pertinent part:

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial ... of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing on the credibility of the accused as a witness. . . .

■ The state referred to appellant's statement to impeach him on cross-examination. Since the statement was voluntary, it was admissible for purposes of impeachment. *Lykins v. State*, 784 S.W.2d 32, 35–37 (Tex. Crim.App.1989). There is evidence in the record to support the trial court's findings that, based upon the totality of circumstances, appellant knowingly, voluntarily, and intentionally waived his rights prior to and during the making of the statement without threats or coercion. While appellant asserted that he was threatened with the death penalty if he did not talk to the officers, the trial court at the *Jackson–Denno* hearing found the officers more credible. *See Butler v. State*, 872 S.W.2d 227, 236 (Tex.Crim.App. 1994), *cert. denied*, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). We hold the trial court did not abuse its discretion in admitting appellant's confession for impeachment purposes. Appellant's point of error two is overruled.

■ In point of error three, appellant contends the trial court did not conduct a "clear voluntariness hearing" and the trial court erred in failing to submit the issue of voluntariness to the jury as required by section 7, article 38.22, Texas Rules of Criminal Procedure. The trial court found appellant's statement was voluntary and admissible for impeachment purposes after conducting a *Jackson–Denno* hearing out of the presence of the jury as set out in this opinion.

Article 38.22, section 7, Texas Rules of Criminal Procedure, provides that where the issue of voluntariness of a confession is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement. *Butler*, 872 S.W.2d at 236. However, before the requested instruction is required, some evidence must be presented to the jury which raises the issue of voluntariness. *Id.* The trial judge is sole judge of credibility of witnesses in at the hearing on voluntariness and, absent a showing of abuse of discretion, a trial court's finding on the voluntariness of a confession will not be disturbed. *Id.* As stated in this opinion, appellant asserted that officers threatened him with the death penalty if he didn't talk to them and the trial court found Sgt Alderette to be more credible. Since there is evidence in the portion of the record documenting the *Jackson–Denno* hearing to support the trial judge's decision to admit the confession, we will defer to the court's ruling. *Id.*

We further find that there was no testimony before the jury which raised the issue that the confession was obtained through coercion. Appellant argues the issue was raised by the prosecutor when she cross-examined appellant about statements he made to the police and he replied: "The only reason I talked to the police because they wouldn't let met leave. I just told them something so they would go ahead and process me that night because I asked for my lawyer a bunch of times and they told me I was going to get the death penalty for capital murder." At

this point, the taped confession was not in evidence and there had been no testimony by the police officers concerning voluntariness of appellant's confession placed before the jury. There was no *factual dispute* concerning the voluntariness of appellant's confession until the *Jackson–Denno* hearing conducted, *out of the presence of the jury.* At that hearing, the trial court heard the evidence from the state (Sgt Alderette's testimony) that *disputed* appellant's blanket assertion that "they" threatened him with the death penalty. There was no "issue raised" by the evidence to be decided by the jury because there was no factual dispute raised before the jury concerning voluntariness.

■ "When the evidence presented at trial raises a factual dispute over whether a defendant's written statement was voluntary, he is entitled to an instruction in the jury charge advising the jury generally on the law pertaining to such statement." *Dinkins v. State*, 894 S.W.2d 330, 353 (Tex.Crim.App. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). In *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App. 1986), cited in *Dinkins,* 894 S.W.2d at 353, the court of criminal appeals stated, in pertinent part: "A trial court is required to include a properly worded Article 38.23 instruction in the jury charge only if there is a factual dispute as to how the evidence was obtained." *Thomas,* 723 S.W.2d at 707. In *Thomas,* the appellant testified but never controverted facts surrounding his refusal to provide a breath sample in a DWI case. The court found that no instruction to the jury was necessary because there was no factual dispute as to how the evidence was obtained. *Id.* We find there was no issue raised by the evidence that would require the trial court to instruct the jury on voluntariness required by article 38.22, section 7, Texas Code of Criminal Procedure. Furthermore, appellant did not object to the state's questions which resulted in his answer that is alleged to raise the issue of voluntariness; no objection was made to the court's charge on this point and no special charge on voluntariness was requested. Accordingly, the trial court did not err in not submitting a jury charge on voluntariness. *See Wiley v. State*, 632

S.W.2d 746, 748 (Tex.Crim.App.1982). Appellant's point of error three is overruled.

■ In point of error four, appellant claims he was denied effective assistance of counsel for: (1) failure to object to improper comments on the evidence by the judge and improper remarks by the prosecutor during voir dire examination of the jury panel; (2) failure to object to the cross-examination of the appellant concerning statements made by him to the court-appointed psychiatrist; (3) failure to object to the state's cross-examination of appellant concerning statements he made to the police; (4) failure to request a hearing on voluntariness; (5) failure to object to various questions by the state to police officers; (6) failure to object to hearsay testimony of various police officers; (7) failure to object to the medical examiner's report; (8) failure to object to the state's cross-examination of appellant concerning his confession; (9) failure to object to the jury charge and request an issue on voluntariness; (10) failure to object to the state's jury argument that "focused on the findings of Doctor Silverman."

The only argument and authority provided by appellant in his multifarious point of error concerns the questioning of appellant concerning his suspension from school for fighting that he related to the court-appointed psychiatrist. The appellant admitted he had been suspended a few times for fighting. Appellant cites *Beasley v. State*, 838 S.W.2d 695 (Tex.App.—Dallas 1992, pet. ref'd), *cert. denied*, 510 U.S. 969, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993). *Beasley* is not applicable to this case. *Beasley* addressed the rules concerning admission of extraneous offenses. We found no error on the part of the state in questioning appellant concerning statements he made to a court-appointed psychiatrist as a result of his combined competency/sanity examination under *DeRusse v. State*, 579 S.W.2d 224, 229–30 (Tex.Crim.App.1979). Such questioning is permissible to rebut appellant's defense of insanity. *Id.* Counsel's failure to object to admissible testimony does not constitute ineffective assistance of counsel. *Cooper v. State*, 707 S.W.2d 686, 689 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Appellant's sub-point of error con-

cerning ineffectiveness for failure to object to the state's cross-examination of appellant concerning statements made to the court-appointed psychiatrist (denominated (2), above), is overruled.

Appellant cites no authority and furnishes no argument, other than conclusions, for the remaining sub-points of error alleging ineffectiveness. Appellant's point of error is multifarious and inadequately briefed. *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim.App.1995). Appellant's point of error four is overruled and the judgment of the trial court is affirmed.

EDELMAN, J., concurs in the result only.