NUMBER 13-00-283-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 


JOSE FEDERICO REYES VILLARREAL, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
On appeal from the 389th District Court

of Hidalgo County, Texas.


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Castillo 

Opinion by Chief Justice Rogelio Valdez



This is an appeal by Jose Federico Reyes Villarreal ("Villarreal") challenging his conviction for murder, after a jury found
him guilty and sentenced him to serve a term of thirty years. We overrule all issues and affirm the trial court's judgment.

STATEMENT OF FACTS

Appellant Villarreal, Isaias Mateo Reyes ("Isaias"), and the now deceased Jorge Reyes ("Reyes") were friends who came
from Mexico to work in the United States. All three found work at a body shop, and resided behind the shop. In the early
morning of August 10, 1998, after Villarreal and Reyes got into a fight, Villarreal killed Reyes. 

The fight took place outside, behind the garage where the three men worked. During the fight, Reyes attempted to run away
as Villarreal pursued. Villarreal then grabbed a bottle and hit Reyes in the face with it, rendering Reyes unconscious.
Villarreal then dragged Reyes under a tree, where he cut Reyes's throat with the jagged edge of the broken bottle's neck. 
Villarreal then went back to the garage and returned with a screwdriver, which he used to stab Reyes in the chest six or
seven times. Finally, Villarreal took a cement cinder block and smashed Reyes in the face several times, eventually
crushing his skull. Villarreal then put Reyes in the trunk of a Ford Taurus and dumped Reyes's body on the side of a road.

Subsequently, the police discovered the body with a note containing the phone number of the garage where Villarreal
worked. Officer Jose Beltran testified that the police continued the investigation at the garage, where they questioned
Villarreal and Isaias. Beltran said Villarreal and Isaias were shown a photograph of Reyes; both denied knowing Reyes. 
Beltran testified that in response to his request for identification, Villarreal and Isaias were unable to provide identification
and stated they were in the country illegally. Shortly thereafter, two other individuals came by the garage and were also
questioned by the police. According to Beltran, all of the individuals were then "detained due to the fact that all four of
them had advised that they were in the United States illegally." (1) The four were taken to the police station. Thereafter, the
police contacted the owner of the garage and obtained consent to search the premises. The officers subsequently
discovered the crime scene behind the garage and recovered Reyes's missing boot, the screwdriver, the broken bottle, and a
bloody T-shirt.

The evidence recovered made Villarreal and Isaias suspects, upon which they were read their Miranda (2) warnings and
subsequently questioned at the police station. Villarreal was informed of his rights twice by officers prior to having both his
written and oral statements taken. Based, in part, on these statements, the police recovered additional evidence including
the cement cinder block, Villarreal's bloody shoes, and carpet from the trunk of the Ford Taurus.

Villarreal was placed under arrest, and taken before a magistrate for arraignment. During the arraignment while the judge
was informing Villarreal of his rights, Villarreal stated he had killed Reyes, and Isaias had only assisted him in placing the
body in the truck. At the trial, after hearing all the evidence, the jury found Villarreal guilty of murder and sentenced him
to the Institutional Division of the Texas Department of Criminal Justice for a term of thirty years.

ANALYSIS

Villarreal challenges the trial court's judgment in three issues. In issue one, Villarreal asserts the trial court erred in
admitting his oral statement taken by the officers. In his second issue, Villarreal contends the court erred in admitting
Villarreal's oral statement taken at his arraignment. Last, in issue three, Villarreal asserts the trial court erred in denying his
requested jury charge. 

Issue One

In his first issue, Villarreal asserts the trial court erred in denying his motion to suppress his oral statement taken by the
police. First, Villarreal contends he was not given a proper Miranda warning because the warning did not follow the
language of article 38.22 of the code of criminal procedure, and the officer that took Villarreal's statement was not the same
officer that gave Villarreal his warnings. See Tex. Code Crim. Proc. Ann. art. 38.22(b) (Vernon Supp. 2001). 
Additionally, Villarreal contends he was not given a consulate warning. Last, Villarreal asserts the evidence recovered
based on his oral statements was not sufficient to conduce to establish his guilt.

In reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination
of the historical facts that the record supports, especially when the trial court's findings turn on evaluating a witness's
credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). We afford the same amount of deference to the trial court's ruling on "application of law to fact
questions," also known as "mixed questions of law and fact," if resolving those ultimate questions turns on evaluating
credibility and demeanor. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. However, we review de novo questions of
law and "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. Ross, 32 S.W.3d
at 856; Guzman, 955 S.W.2d at 89.

In this case, the trial judge did not specify his reasons for denying the motion to suppress. Where, as here, no findings of
fact are filed by the trial court, "we view the evidence in the light most favorable to the trial court's ruling and assume that
the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."
Ross, 32 S.W.3d at 855. If the trial judge's ruling on a motion to suppress is correct on any theory of the law applicable to
the case, we will sustain it. State v. Avila, 910 S.W.2d 505, 508 (Tex. App.--El Paso 1994, pet. ref'd). 

The issue before us presents a mixed question of law and fact that does not turn on an evaluation of the credibility of the
witnesses. Guzman, 955 S.W.2d at 89. We will, therefore, utilize a de novo standard of review. See id. 

First, Villarreal contends his oral statements are not admissible under article 38.22 because he received improper warnings. 
Tex. Code Crim. Proc. Ann. art. 38.22 § 2(b) (Vernon 1979). Specifically, he contends the warnings he received were
improper because the waiver he signed did not contain the statement that "I knowingly, voluntarily and intelligibly waived
the rights described above before and during the making of this statement."

However, for oral statements, the waiver of Miranda rights need not be express. North Carolina v. Butler, 441 U.S. 369,
373 (1979). The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the
rights delineated in the Miranda case. Id. The waiver requirements are satisfied if, before making a statement, a defendant
is advised of his rights and merely states that he understands them. Etheridge v. State, 903 S.W.2d 1, 17 (Tex. Crim. App.
1994). There is no requirement that the confession be preceded by an express statement from the accused that he
affirmatively waives his rights. Id. at 16-18.

In the present case, the record demonstrates that Villarreal first communicated to Officer Vasquez that he waived his rights
and subsequently initialed his name at the signature portion of the wavier form. Additionally, prior to further questioning,
Officer Martinez administered the Miranda warnings to Villarreal. Again, Villarreal advised Officer Martinez that he
waived his rights. Thus, the record demonstrates Villarreal was properly warned, and did waive his rights.

Next, Villarreal claims the Miranda warnings were improper because the officer that gave him the warnings was not the
same officer that took his statement. The record reflects that first Officer Vasquez read Villarreal his warnings in Spanish,
and Villarreal then signed the waiver form. After receiving this first set of warnings and signing the waiver form, Villarreal
was then taken to another room for questioning by Officer Martinez. However, before Officer Martinez took Villarreal's
statement, he read the warnings to Villarreal again. Hence, the record reflects the officer that gave Villarreal his warnings
was in fact the same officer that took Villarreal's statements. Additionally, the language in article 38.22, section 2(a),
requiring warnings to be given by the person "to whom the statement is made" does not apply to oral statements, but applies
only to written statements. Dowthitt v. State, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996). Thus, the taking of Villarreal's
statement by Officer Martinez was proper. 

Next, Villarreal asserts the trial court erred in denying his motion to suppress his oral statements because, prior to making
the confession, the officers did not inform Villarreal that he had the right to contact the Mexican consulate pursuant to the
Vienna Convention, and thus the officers violated article 38.23. Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.
2001). Article 38.23(a) provides that:

a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State
of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused
on the trial of any criminal case. 



Id. Villarreal contends that treaties fall within the meaning of "laws of the United States of America," and therefore, any
evidence obtained in violation of the Vienna Convention Treaty is inadmissible. The Texas Court of Criminal Appeals has
recently addressed the issue of whether a treaty falls within the meaning of "laws" for purposes of the exclusionary rule. In
holding that it does not, Judge Keller, writing for a 5-4 majority, explained:

When used in a series, then, "laws" would appear to be distinct from treaties. On the other hand, "law," when used as an
overarching concept, encompasses constitutions, laws, and treaties. Because "laws" and "Constitution" both appear in
Article 38.23, the narrower meaning of laws, as being distinct from treaties, would appear to apply. 



Rocha v. State, 16 S.W.3d 1, 30-31 (Tex. 2000). As noted by Judge Holland, in her well-reasoned concurring opinion, (3)
we find it impossible to reconcile the Rochamajority's holding that a treaty is not a "law" for article 38.23 purposes with
U.S. Supreme Court case law expressly concluding that a treaty is the equivalent of a statute. See id. at 64 (Holland, J.
concurring) (noting Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 10 (1936), holding that a treaty is to be treated
as a statute in our courts if that treaty determines rights of private citizens). 

We are, however, bound by the slim majority holding of the court of criminal appeals in Rocha. Accordingly, we must
reject Villarreal's argument that violation of the Vienna Convention rendered his statement inadmissible.

Last, Villarreal contends the court erred in admitting his oral statement because the physical evidence obtained based on
that statement was insufficient to conduce to establish his guilt. Generally, oral confessions are not admissible unless they
meet the requirements of article 38.22. Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2001). Oral statements
asserting facts or circumstances establishing the guilt of the accused are admissible if, at the time they were made, they
contained assertions unknown by law enforcement but later corroborated. Tex. Code Crim. Proc. Ann. art. 38.22 § 3(c)
(Vernon Supp. 2001). Such oral statements need only circumstantially demonstrate the defendant's guilt. Port v. State, 791
S.W.2d 103, 106 (Tex. Crim. App. 1990). Furthermore, if such an oral statement contains even a single assertion of fact
found to be true and conducive to establishing the defendant's guilt, then the statement is admissible in its entirety. Marini
v. State, 593 S.W.2d 709, 713 (Tex. Crim. App. 1980).

Based upon Villarreal's statement, the police were later able to recover several pieces of evidence, including a cinder block
from behind the garage, glass bottle fragments, carpet fibers from the truck of the car, and Villarreal's bloody shoes. Alex
Madrigal from the Department of Public Safety crime laboratory confirmed the blood deposited on these items was that of
Jorge Reyes, corroborating Villarreal's statement of how he murdered Reyes and what he used. Therefore, issue one is
overruled.

Issue Two


In issue two, Villarreal contends the trial court erred in admitting his oral statement made to the court during his
arraignment. During the arraignment, while the judge was informing Villarreal of his rights, Villarreal abruptly stated that
he had killed Reyes and that Isaias had only helped him put the body into the car's trunk. Villarreal contends the trial court
erred in admitting this statement because it was in violation of his rights under Miranda and under article 38.22. 

Article 38.22, section 3, applies to oral statements taken while the defendant is subject to custodial interrogation. Nothing
in article 38.22 precludes the admission of a statement that does not stem from custodial interrogation. Tex. Code Crim.
Proc. Ann. art. 38.22 § 5 (Vernon 1979). If either "custodial" or "interrogation" predicates are not met, then article 38.22
does not apply. Little v. State, 853 S.W.2d 179, 183 (Tex. App.-Corpus Christ 1993, no pet.). Interrogation includes
speech or conduct by the police which the police should know is reasonably likely to elicit an incriminating response from
the suspect. Rhode Island v. Innis, 446 U.S. 291, 308 (1980). In the present case, Villarreal spontaneously stated he killed
Reyes and that his friend, Isaias, only helped place Reyes's body into the trunk of the car. Although Villarreal was in
custody, the record reflects this statement was not made in response to any interrogation, much less any police
interrogation. Since Villarreal's statement was not the product of custodial interrogation, the admission of the statement
into evidence did not violate Miranda or article 38.22. Issue two is overruled.

Issue Three


Villarreal argues in his third issue that the trial court erred by excluding from the court's charge to the jury the following
requested defensive instructions:

 


 Self Defense


 


 Apparent Danger-right to strike first


 


 Apparent Danger-attack with deadly force


 


 Oral Confession-deleting fruits of poisonous tree


 First, Villarreal alleges he was entitled to an instruction regarding self defense. When evidence from any source raises the
issue of a lesser included offense or a defensive theory, it must be included in the charge. Gibson v. State, 726 S.W.2d 129,
132 (Tex. Crim. App. 1987). The court is not required to charge the jury on an issue not raised by the evidence. Carrillo
v. State, 591 S.W.2d 876, 890 (Tex. Crim. App. 1979); Segura v. State, 850 S.W.2d 681, 687 (Tex. App.- Corpus Christi
1993, no pet.).

The use of force against another for self-defense is justified "when and to the degree the actor reasonably believes the force
is immediately necessary to protect himself against the other's use or attempted use of unlawful force." Tex. Pen. Code
Ann. § 9.31 (Vernon Supp. 2001). The use of deadly force requires a showing that the use of deadly force is immediately
necessary and a reasonable person in the actor's situation would not have retreated. Tex. Pen. Code Ann. § 9.32 (Vernon
Supp. 2001). 

In the present case, the record reflects Villarreal inflicted deadly force against Reyes after Reyes was unconscious. The
evidence presented at trial established Reyes did not use any deadly force and did not have a weapon. Further, to claim self
defense, the appellant must present evidence that his actions were immediately necessary to protect himself. Warren v.
State, 764 S.W.2d 906, 909 (Tex. App.-Corpus Christi 1989, pet. ref'd). After rendering Reyes unconscious, Villarreal
went to the garage and returned with a screwdriver. There, Villarreal used the screwdriver to stab Reyes in the chest six or
seven times. Therefore, the record reflects deadly force was clearly not immediately necessary, because sufficient time
elapsed to allow Villarreal to leave the crime scene and then return to use deadly force on an unconscious victim. The facts
do not raise the issue of self defense, hence Villarreal's assertion the trial court erred in denying an instruction on self
defense is overruled. Next, Villarreal contends the trial court erred in denying the defense's request for an instruction for
apparent danger-right to strike first. Apparent danger is a facet of self defense. Warren, 764 S.W.2d at 909. Since
Villarreal was not entitled to have an instruction on self-defense, he was not entitled to have an instruction on this specific
type of self defense submitted. Id. This contention is overruled.

Third, Villarreal asserts the trial court erred in denying his request for a defensive jury charge instruction regarding
apparent danger-the use of deadly force. Deadly force may only be used when a reasonable person would not have
retreated, and when deadly force is reasonably necessary to protect against another's use or attempted use of unlawful
deadly force. Tex. Pen. Code Ann. § 9.32 (Vernon Supp. 2001). The record indicates, at the time Villarreal used the
deadly force on Reyes, Reyes was unconscious and had been for several minutes. Thus, Reyes did not threaten Villarreal
with the use of any unlawful deadly force. Therefore, this contention is overruled.

Last, Villarreal contends the trial court erred in denying his request to instruct the jury that if it found the oral confession
was obtained illegally, then it should not consider any evidence obtained from it. The actual jury charge contained the
language regarding Villarreal's Miranda warnings:

If, however, you find beyond a reasonable doubt that the aforementioned warnings were given the Defendant prior to his
having made such statement, if he did make it, still, before you may consider such statement as evidence in this case, you
must find from the evidence beyond a reasonable doubt that prior to making such oral statement, if he did the Defendant
knowingly, intelligently and voluntarily waived the rights hereinbefore set out in the said warning, and unless you so find,
or if you have a reasonable doubt thereof, you will not consider the oral statement or oral confession for any purpose
whatsoever. 

Villarreal complains the end of the instruction should have included the language, "nor any evidence obtained as a result
thereof" in accord with article 38.22, section 6 of the Texas Code of Criminal Procedure.

Article 38.22, section 7 provides, "When the issue is raised by the evidence, the trial judge shall appropriately instruct the
jury, generally, on the law pertaining to such statement." The jury charge contains an incomplete instruction. "However,
before the requested instruction is required, some evidence must be presented to the jury which raises the issue of
voluntariness." Butler v. State, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994); see also Brownlee v. State, 944 S.W.2d 463,
467 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd). In the instant case, there is no dispute as to the facts surrounding
Villarreal's statement. While Villarreal contested the voluntariness of his statement through a pre-trial motion to suppress,
Villarreal produced no evidence to the jury to indicate that his statement was involuntary. Accordingly, no jury instruction
was required. Because we find that Villarreal was not entitled to the charge of which he complains, we further find that the
trial court did not err in providing the jury with an incomplete instruction. Therefore, issue three is overruled.

CONCLUSION

 In conclusion, issues one, two and three are overruled. The judgment of the trial court is AFFIRMED.



__________________

ROGELIO VALDEZ

Chief Justice





Publish.

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 1st day of November, 2001.

1. We note that one's illegal presence in the country (as opposed to illegal entry) is insufficient, without more, to constitute
a criminal offense enforceable by state or local authorities. Although local police officers are not precluded from
enforcement of criminal provisions of federal immigration laws, such authorization does not extend to illegal presence,
which constitutes a civil violation. See Mountain High Knitting, Inc. v. Reno, 51 F.3d 216, 218 (9th Cir. 1995) ("Although
the lack of documentation or other admission of illegal presence may be some indication of illegal entry, it does not,
without more, provide probable cause of the criminal violation of illegal entry.")(quoting Gonzales v. Peoria, 722 F.2d 468,
476-77 (9th Cir. 1983)). However, in the case before us, appellant did not challenge the admissibility of the evidence on
grounds that it was obtained pursuant to an illegal detention. Accordingly, we do not address that issue. 

2. Miranda v. Arizona, 384 U.S. 436 (1966).

3. Judge Holland, joined by Judges Myers, Price, and Johnson, delivered an opinion concurring on all points except point
of error five, which addresses whether article 38.23 is a permissible enforcement mechanism for violations of the Vienna
Convention. Judge Holland concludes that it is. Rocha v. State, 16 S.W.3d 1, 57-59 (Tex. Crim. App. 2000)(Holland, J.,
concurring).