# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00344-CR

**Pete Terrazas, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-04-300001, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Pete Terrazas appeals his conviction by a jury of murder. *See* Tex. Pen. Code § 19.02 (West 2003). The trial court assessed punishment at twenty-five years' confinement in the Texas Department of Criminal Justice—Institutional Division, as enhanced by prior convictions. In eight issues, appellant challenges (i) the admission of a confession, evidence seized pursuant to a consent to search, and autopsy photographs, (ii) the admission of an extraneous offense, (iii) jury instructions regarding intent and lesser-included offenses, and (iv) the State's misstatement of law in its rebuttal closing statement. For the reasons that follow, we affirm the judgment of conviction.

## FACTUAL BACKGROUND

The evidence at trial showed that on the night of December 31, 2003, the 72-year-old appellant shot and fatally wounded his neighbor, Michael Ruiz, as Ruiz returned to his home at 909

Fiesta Street.  Appellant, who lived at 911 Fiesta Street, had been drinking beer with a friend in his front yard.

Grace and Henry Uballe had arrived at her parents' house at 907 Fiesta Street for a family gathering to celebrate New Year's Eve.  Mrs. Uballe testified that, at approximately midnight, as the family was standing in her parents' front yard to watch fireworks, her husband yelled out, "That man is shooting that man."  Mr. Uballe testified that he heard a gunshot as he observed Ruiz pull into his driveway in his truck, get out of the vehicle, and walk towards his front door.  He saw Ruiz stagger to his front door and then towards the back of the house.  Mr. Uballe saw appellant fire his gun at Ruiz a second time as Ruiz staggered toward the back of the house.  Mrs. Uballe also observed appellant standing behind a boat in his driveway holding a shotgun and pointing toward the back of Ruiz's house.  Mrs. Uballe found Ruiz lying wounded on his back porch.  The neighbors called emergency services.

Another family member at the gathering at 907 Fiesta, Edward Medel, also observed the shooting.  Medel did not feel well and laid down in his brother's car, which was parked in the street in front of appellant's home.  As he began hearing fireworks, he stepped out of the vehicle to celebrate with other family members.  He heard a gunshot and saw appellant fire a shot from the boat toward the Ruiz home.  He testified that he then saw appellant go around the boat and fire a second shot in the direction of the house: "he was pointing [the weapon] across the fence."  Medel recalled hearing two shots.  After the second shot, Medel observed appellant walk into his house: "[A]pparently he went to go put up his gun."  Mr. and Mrs. Uballe also observed appellant enter his house, return without the gun, and then join his friend who had been sitting with appellant in appellant's yard.  Medel testified that when appellant returned to join his friend, the friend "gave him

2

a high-5." Both appellant and his friend were sitting in the front yard drinking beer when the police arrived.

Appellant was arrested and transported to the police station. After being advised of his rights, appellant was videotaped giving a statement in which he was again advised of his rights. He confessed to the shooting. He also gave a written statement and consented to a search of his home. Appellant admitted that he harbored ill will toward Ruiz because Ruiz was having an affair with the woman who served as caretaker for Ruiz's invalid wife. Appellant also stated that he believed that Ruiz put the woman up to filing charges against him several weeks earlier. In his written statement, appellant described the shooting:

> I got my bolt action .410 shotgun from my bedroom. I loaded it with 3 shells and brought outside setting it by a tree in my front yard. I was sitting with Isaias when I got the shotgun and brought it outside. I did not tell him that I was going to shoot Ruiz. He may have believed that I brought out the shotgun to celebrate the New Year. Sometime after all the fireworks started Ruiz arrived home driving his tan colored truck. I know that he was getting home after screwing the maid. Ruiz got out of the truck and began walking between the houses . . . . When Ruiz got to the corner of his house I raised the shotgun to my shoulder and fired it at him. I could see that Ruiz was shot. He began staggering to his kitchen door and I shot him again. I then saw him fall. I took the shotgun inside my house and put it under the dresser in my bedroom. Det. de los Santos asked me where I put the shells. I told him that they were on a shelf in my closet. Neither Ruiz nor I said anything to each other at the time of the shooting. Det. de los Santos asked me what I would have told Ruiz if I had said anything at all to him. I would have told him he was a damn dirty man for doing that to his wife—that being having an affair with the maid.

In the search of his home, the detectives found the shotgun used in the shooting and a box of ammunition containing shells identical to those found in appellant's front yard on the night of the shooting. A detective testified that the shells found in the yard had been fired from the shotgun found in appellant's home.

3

Appellant was convicted of murder. This appeal followed.

## ANALYSIS

*Motion to Suppress*

In his first issue, appellant contends that his videotaped and written statements were obtained in violation of his Fifth Amendment right against self-incrimination, Article 1, Section 9 of the Texas Constitution, and section 38.22 of the Texas Code of Criminal Procedure. *See* U.S. Const. amend. V; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). In his second issue, appellant contends that the evidence seized pursuant to his consent to search violated his Fourth Amendment right against unreasonable searches and seizures and Article 1, Section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. 1, § 9. He urges that the warnings, given at 2:15 a.m. to a 72-year-old man who had been drinking, were not adequate and that therefore his statements and consent to search were invalid.

"[W]hen reviewing a trial court's decision to deny a motion to suppress, an appellate court 'should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor.'" *Montanez v. State*, No. PD-894-04, 2006 Tex. Crim. App. LEXIS 830, at *5 (Tex. Crim. App. Apr. 26, 2006) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). An appellate court should afford the same amount of deference to the trial court's rulings on "application of law to fact questions," or mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Montanez*, 2006 Tex. Crim. App. LEXIS 830, at *5-6. The deferential standard of review in *Guzman* applies to a trial

4

court's determination of historical facts even when that determination is based in part on a videotape recording admitted into evidence at the suppression hearing. *Id*. at *22-23.

We must affirm the trial court's judgment on the motion to suppress if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990). Accordingly, if supported by the record, we are to afford almost total deference to the trial court's decision to uphold the denial of the motion to suppress (i) the statements and (ii) the search based upon appellant's consent. *Montanez*, 2006 Tex. Crim. App. LEXIS 830, at *22-23.

In this case, the suppression hearing was held on the second day of trial. Only one witness, Sergeant Eric de los Santos of the Austin Police Department, testified. Appellant did not testify. The trial court's implied fact findings and application of the law to facts necessarily turned on the court's evaluation of de los Santos's credibility and demeanor.

De los Santos testified that he was the lead detective in the investigation of the murder of Miguel Ruiz and that he interviewed appellant at the main headquarters of the police department on the early morning of January 1, 2004. He read appellant his rights and, after appellant waived his rights, de los Santos videotaped an interview in which appellant consented to a search of his house[1] and told police where they could find the weapon used in the shooting. Appellant did not invoke his right to an attorney or seek to terminate the interview. At the end of the interview, he signed a written confession. De los Santos testified that appellant at times rambled as he

---

[1] The State was unable to locate the consent form executed by appellant and argued that the consent was obtained and the form was executed as recorded on the videotape. De los Santos also testified that appellant consented to the search and that appellant signed the standard consent form.

5

described the incident, but that he did not appear to be intoxicated. At the close of the hearing, the trial court denied appellant's motions to suppress the statements and the evidence seized pursuant to the consent search.

The record does not support appellant's contention that his statement was involuntary. According to de los Santos's testimony at the hearing, appellant was advised of his rights and consented to be interviewed. De los Santos testified that he advised appellant of his rights, and the videotape shows appellant being advised of his rights. Appellant never sought to terminate the interview or to invoke his rights. At the close of the interview, appellant signed a written confession and initialed that portion of the form advising him of his rights. De los Santos testified that appellant appeared to understand the proceedings, freely and voluntarily gave the statement, and did not appear to be intoxicated. Appellant had arrived at the police department and was advised of his rights at 2:14 a.m. The video statement was concluded and appellant signed his written confession at 3:51 a.m. We cannot say the trial court abused its discretion in finding the statements voluntary and in overruling appellant's motion to suppress.

Appellant also urges that the court erred when it overruled his objection to the admission of a shotgun and shotgun shells obtained in a search of his house in violation of the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. 1, § 9. Because the State misplaced the executed consent form, he urges that there is inadequate evidence before the court to show that he was adequately warned of his rights or that he consented.[2]

_____

[2] Although the United States Constitution requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the more exacting

Consent is a well-established exception to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). To be valid, consent must be voluntary, and voluntariness is a fact question to be determined from all the circumstances. *Schneckloth*, 412 U.S. at 227; *Carmouche*, 10 S.W.3d at 331. Consent must be positive, unequivocal, and not coerced by explicit or implicit means. *Schneckloth*, 412 U.S. at 228; *Carmouche*, 10 S.W.3d at 331. Some factors that may be considered to determine the voluntariness of consent are the youth, education, and intelligence of the accused; the constitutional advice given to the accused; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment. *Schneckloth*, 412 U.S. at 226; *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

There was no evidence of any threats or coercion. Even without a copy of the consent form, there was ample evidence from which the trial judge could find that appellant consented to the search. De los Santos testified that appellant consented to the search and the court viewed the videotape that showed appellant giving his consent. In his written confession, appellant told the officers where they could find the gun and ammunition. We conclude that the trial court did not abuse its discretion in overruling appellant's motion to suppress the evidence seized pursuant to his consent to search.

We overrule appellant's first and second issues.

---

standard of clear and convincing evidence. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Appellant's challenge references both grounds and we will therefore review the evidence under the more protective Texas standard. *See Johnson v. State*, 68 S.W.3d 644, 652 n.30 (Tex. Crim. App. 2002).

*Admission of Autopsy Report and Photographs*

In his third and fourth issues, appellant contends that the trial court abused its discretion in admitting autopsy photographs because they constituted hearsay evidence and were gruesome and unduly prejudicial. Because the photographs were admitted during the testimony of Travis County Chief Medical Examiner Roberto Bayardo, who was not present during the autopsy and did not see the photographs taken, appellant contends that the photographic exhibits were hearsay and admitted in violation of his Sixth Amendment right to confrontation.[3] *See* U.S. Const. amend. VI. In addition, he objects that the autopsy report was admitted as a business record in violation of Texas Rule of Evidence 801. He further contends that the photographic exhibits should have been excluded because any relevance the photographs had was substantially outweighed by their prejudicial effect in violation of Texas Rule of Evidence 403.

We first address the admission of the autopsy report. Generally, autopsy reports are admissible pursuant to the public record and business record exceptions to the hearsay rule. Tex. R. Evid. 803(6), (8); *Butler v. State*, 872 S.W.2d 227, 238 (Tex. Crim. App. 1994); *Garcia v. State*, 868 S.W.2d 337, 342 (Tex. Crim. App. 1993). An autopsy report is provided by a medical examiner who holds a public office, *see* Tex. Code Crim. Proc. Ann. art. 49.25, § 1 (West Supp. 2005), with duties imposed by law related to the preparation and filing of a report stating the cause of death. *Id*. art. 49.25, §§ 6, 9, 11; *Butler*, 872 S.W.2d at 237-38 (citing Tex. R. Evid. 803(8)(B)); *Garcia*, 868

---

[3] Appellant contends he was denied his confrontation right under the United States Constitution and under the Texas Constitution. However, because appellant does not brief his claims separately, we assume he claims no greater protection under the state constitution. Therefore, we apply only the Confrontation Clause of the Sixth Amendment of the United States Constitution to this analysis. *See Lagrone v. State*, 942 S.W.2d 602, 614 (Tex. Crim. App. 1997).

S.W.2d at 340-42. Moreover, the autopsy report is subject to required public disclosure. Tex. Code Crim. Proc. Ann. art. 49.25, § 11 (West Supp. 2005).

In determining the admissibility of this evidence subject to a confrontation challenge, we need not address whether the autopsy report was testimonial or non-testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36 (2004). Here, the autopsy was conducted by pathologist Vladimir M. Parungao at the request and authorization of Dr. Bayardo and in the presence of Detective Manuel Fuentes of the Austin Police Department; the report was admitted into evidence. It was signed by both Parungao, the examining pathologist who was unavailable and did not testify because he had retired, and Bayardo, who was the chief medical examiner and testified. The report sets forth matters observed pursuant to a duty imposed by law, including the location and the nature of the injuries. The report revealed that the body was found with a shotgun wound blast to the upper body and wound blasts to the back of both buttocks. The report described the direction of the entry wounds. It concluded that the death was a homicide and that Ruiz "came to his death as a result of shotgun wound blast of the chest and neck." Bayardo testified and was subject to cross-examination. Because Bayardo was also a signatory to the report and was qualified to offer his expert opinion on the cause of death, we conclude that the introduction of the autopsy report did not violate the Confrontation Clause.

Moreover, even if the introduction of the autopsy report without the forensic pathologist's testimony was error, the error would be harmless. Tex. R. App. P. 44.2(a). The evidence presented by the State, even without the report, was sufficient upon which to base a finding that appellant was guilty. If the admission of the report violated either the rules of evidence or the

9

Confrontation Clause, we are satisfied beyond a reasonable doubt that it did not contribute to the conviction or punishment.

Appellant also complains that the trial court abused its discretion in admitting the autopsy photographs because the prejudicial effect of the photographs substantially outweighed their relevance. *See* Tex. R. Evid. 403. Rule 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.*; *Erazo v. State*, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004); *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). "Unfair prejudice" does not simply mean that the evidence will injure or prejudice the opponent's case. *See Torres v. State*, 794 S.W.2d 596, 600 (Tex. App.—Austin 1990, no pet.). Rather, it refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*.

The admissibility of photographs is within the sound discretion of the trial court. *Shuffield v. State*, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006); *Chamberlain*, 998 S.W.2d at 237. Several factors may be considered in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs, including the number of exhibits offered, their gruesomeness, detail, and size, whether they are black and white or color, and whether the body is naked or clothed. *Shuffield*, 189 S.W.3d at 787; *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992). Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Hayes v. State*, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002). Changes rendered by the autopsy process are of minor significance if the disturbing nature of the photograph is primarily due to the injuries caused by the appellant. *Id*. Applying an abuse-of-

10

discretion standard, we must determine whether the trial court abused its discretion in admitting the photographs because the danger of unfair prejudice substantially outweighed the probative value of the photographs. *Shuffield*, 189 S.W.3d at 788.

Appellant objected to the admission of autopsy photographs, which included State's exhibits 53 through 60, on the ground that the photographs were inflammatory and that their inflammatory value outweighed their probative value. Of particular significance was State's exhibit 59, a photograph showing pellet shots sustained to Ruiz's buttocks. Appellant complained that the photographs "coupled with the older age of the accused unfairly prejudiced Terrazas in that it lent a false lightness to the gravity of the accusations facing Terrazas." Appellant urged that the photographs were unnecessary, that the autopsy report was already in evidence, and that Bayardo could have given his opinion without resort to the gruesome photographs.

At issue at trial was appellant's intent. As defense counsel argued in his closing statement, "But what I tried to bring you in this evidence was evidence that bore directly upon the issues of knowledge and intent." Testimony showed that appellant had been drinking and defense counsel queried whether the wounds were intentionally inflicted, "Just because [you] shoot at somebody or shoot somebody doesn't mean that you intend to kill them." He then addressed Bayardo's testimony and the photographic exhibits showing the direction of the wounds as Ruiz struggled and staggered to get into his house.

The photographs at issue were probative of the manner in which the decedent incurred the fatal injury and depict the wounds Ruiz suffered. The State argued that they were necessary for the State in proving its case and responding to the appellant's defense theory. The task of the jury was to determine if the physical evidence was consistent with the testimony of the eyewitnesses. As

11

the court of criminal appeals has observed, "Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions." *Chamberlain*, 998 S.W.2d at 237. Although the photographs were explicit, they were not particularly gruesome. The wounds were small pellet marks rather than large gunshot wounds or lacerations. We cannot say the trial court abused its discretion in admitting them, as the danger of unfair prejudice did not substantially outweigh the probative value of the photographs. Appellant's third and fourth issues are overruled.

### *Admission of Extraneous Offense*

In his fifth issue, appellant contends that the trial court erred in allowing Maria Santia, the deceased's wife's caretaker, to testify concerning appellant's unwanted attention directed at her. Appellant urges that her testimony that he "bothered her" and that she filed charges against him is character evidence or proof of an inadmissible extraneous act admitted in violation of Texas Rule of Evidence 404(b).

Evidence of other crimes, wrongs, or acts of a defendant is not admissible unless it is relevant to prove some issue other than the defendant's criminal character. Tex. R. Evid. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990) (op. on reh'g). Such other issues include identity, intent, motive, opportunity, preparation, and absence of mistake or accident. *Id*. at 387. We review the trial court's ruling on the admissibility of an extraneous offense under an abuse of discretion standard. *Id*. at 391.

The State was required to prove, as an element of the charged offense, that appellant intended to cause death, serious bodily injury, or bodily injury. Appellant disputed that he knowingly and intentionally caused the death.

12

In his confession, on three occasions, appellant referenced a motive relating to Santia, who took care of Ruiz's invalid wife. Prior to Santia's testimony, defense counsel sought to redact the version of the written confession admitted into evidence to remove references to Santia, including a reference to Santia filing charges against appellant several weeks prior to the murder. The trial judge concluded that the reference to the charges was "fairly integral as a motive, that [the appellant] thinks the deceased put the other person up to filing charges on him." The judge then offered to give the jury a limiting instruction that they should "in no way" consider the incident as evidence of the defendant's guilt.

Santia then testified that she went out with the appellant on three occasions, but stopped seeing him because he drank excessively. When she told him that she did not want to see him again, he "started to bother" her and to follow her "everywhere." On cross examination, she testified that on one occasion when he followed her to the supermarket, she reported him to the police and appellant was arrested. Appellant was charged with stalking.

In his written statement, appellant could not recall the "maid's name," but he knew that Ruiz was having an affair with her. It angered appellant that Ruiz was making a "fool" of his wife and that he was a "damn dirty man for doing that to his wife." Appellant then stated,

> Because Ruiz is screwing the maid I decided to shoot him. I was fed up and had enough. Also this same maid is the one that filed charges on me several weeks ago. I was arrested as a result of the charges being filed. I believe that Ruiz put the maid up to filing the charges against me.

The testimony clearly provided proof of motive for the shooting and the trial court did not abuse its discretion in admitting Santia's testimony. Nor was the probative value of the evidence outweighed

13

by any unfair prejudice. *See* Tex. R. Evid. 403. The State, during its direct examination, elicited testimony relevant only to proof of motive. It was not until cross examination that Santia, in response to questioning, elaborated that she had a police officer arrest appellant when he followed her to the supermarket. Additionally, Santia testified that appellant had never been violent with her and she provided no detail as to the nature of the charges filed against him and referenced in his written confession.

Here, the evidence was relevant to prove that appellant acted with the state of mind required by the offense of which he was accused and to rebut appellant's theory that the shooting was not intentional. Because the evidence was relevant to prove a legitimate non-character purpose under rule 404(b) and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, we conclude that the trial court did not abuse its discretion in admitting Santia's testimony. We overrule appellant's fifth issue.

### *Jury Instructions*

In his sixth issue, appellant objects to the manner in which the trial court instructed the jury regarding the definition of "knowing and intentional" and its failure to submit appellant's proposed charge. With respect to intent, the court charged:

> A person acts intentionally, or with intent, *with respect to a result of his conduct* when it is his conscious objective or desire to cause the result.

> A person acts knowingly, or with knowledge, *with respect to a result of his conduct* when he is aware that his conduct is reasonably certain to cause the result.

(Emphasis added.) Appellant objected to the inclusion of the words "with respect to a result of his conduct" as part of the definition of both knowing and intentional. Citing *Cook v. State*, 884 S.W.2d

14

485, 491 (Tex. Crim. App. 1994), appellant argued that it violated his Sixth Amendment right to a fair trial and due process rights under the Fifth Amendment requiring appellant to be proved guilty beyond a reasonable doubt. *See* U.S. Const. amends. V, VI.

Any stated culpable mental state is an element of the offense. *See* Tex. Pen. Code § 1.07(a)(22)(B) (West Supp. 2005). Failure to instruct the jury concerning a culpable mental state is to omit an element of the offense from the instruction and would be error. Murder is a "result of conduct" offense. *Cook*, 884 S.W.2d at 490; *see also Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) ("Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death"). As a "result of conduct" offense, "what matters is that the conduct (whatever it may be) is done with the required culpability to effect the result the Legislature has specified." *Cook*, 884 S.W.2d at 490 (quoting *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). Any other language relating to conduct is inconsequential. *Id*. It would have been error, then, to have defined "intentionally" or "knowingly" as they relate to the *nature* of the conduct as opposed to the *result* of the conduct. *Id.*; *Wallace v. State*, 763 S.W.2d 628, 629 (Tex. App.—San Antonio 1989, no pet.) (citing *Alvarado*, 704 S.W.2d at 37). The trial court did not commit error by this instruction.

In his seventh issue, appellant objects to the trial court's denial of appellant's request for an instruction on the lesser-included offenses of manslaughter and criminally negligent homicide. The jury convicted appellant of murder. Appellant argues that by failing to charge the jury on the lesser-included offenses, the trial court violated his Sixth Amendment right to a fair trial. *See* U.S. Const. amend. VI.

15

A charge on a lesser-included offense is required where (1) the lesser-included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). Because manslaughter and criminally negligent homicide are lesser-included offenses of murder, the first requirement is met. *See, e.g., Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999) (manslaughter); *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992) (criminally negligent homicide).

Appellant does not cite to any evidence in the record, however, that the second requirement is met. Having reviewed the record, we are unable to find any evidence that would permit a rational jury to find that, if guilty, the appellant was only guilty of either manslaughter or criminally negligent homicide. No evidence raises any issue of recklessness or a failure to perceive the risk involved in the conduct nor does appellant cite to any evidence.

We overrule appellant's sixth and seventh issues.

### Improper Argument

In his eighth issue, appellant contends that the trial court erred when it failed to grant a mistrial when the State argued a misstatement of law in the State's rebuttal closing. The State responds that the trial court's instruction to the jury to disregard the statement cured any possible error.

We review a trial court's decision to deny a motion for mistrial under an abuse of discretion standard of review. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). When

16

a trial court sustains an objection and instructs the jury to disregard, we presume the jury complies with the court's instruction. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). An argument that exceeds permissible bounds will not amount to reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the defendant. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). An instruction to disregard will generally cure the error unless the State's remarks constituted a wilful and calculated effort to deprive the defendant of a fair and impartial trial. *Id*.

In his closing, defense counsel argued that appellant was confused and drunk. Because Sergeant de los Santos never asked appellant in the videotaped interview whether he "intended" to kill Ruiz, defense counsel argued that de los Santos avoided asking appellant that direct question because appellant would have denied that the shooting was intentional. In his rebuttal closing, the prosecutor urged the jury to listen to appellant's voice on the videotape: "What happened last night?" "I shot him. I took my gun, I aimed it, I shot him. And then I shot him again." Arguing that appellant was intending to kill, the prosecutor then stated:

> If you wanted to buy [defense counsel]'s theory of murder cases nobody could ever be convicted of a murder unless they said 'I intended to kill.' Well, ladies and gentlemen, people don't say that. And you know what? A lot of times we get murder cases and we try people and we convict them without a confession at all.

The trial court sustained appellant's objection and instructed the jury to disregard the statement. The trial court then denied appellant's motion for a mistrial.

Considering the entire record, we cannot say that the prosecutor's statement was a wilful or calculated effort to deprive appellant of a fair and impartial trial. The prosecutor was

17

responding to the defense counsel's argument that appellant never said that he intended the killing and that the police officer purposefully avoided asking him that direct question. We are confident that the trial court's prompt instruction cured any harm that the statement may have caused. The trial court did not abuse its discretion in denying appellant's motion for a mistrial.

We overrule appellant's eighth issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   July 28, 2006

Do Not Publish

18