**AFFIRM as modified; Opinion issued April 9, 2013**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00325-CR**
**No. 05-12-00326-CR**

**CEDRIC MONK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause Nos. F05-50150-J and F11-55331-J**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Murphy, and Fillmore
Opinion by Justice Lang-Miers

Cedric Monk appeals his conviction for aggravated assault with a deadly weapon in case no. 05-12-00326-CR and the adjudication of his guilt in an earlier aggravated assault in case no. 05-12-00325-CR. Appellant challenges the sufficiency of the evidence in both cases and also argues that the trial court committed charge error in the most recent case. We affirm the judgment in case no. 05-12-00325-CR. We modify the trial court's judgment in case no. 05-12-00326-CR to add a deadly weapon finding and affirm the judgment as modified. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled.

### BACKGROUND

Appellant pleaded guilty to aggravated assault with a deadly weapon, a knife, committed in 2005 against his brother Lester Monk (case no. 05-12-00325-CR). The trial court deferred a

finding of guilt and placed appellant on community supervision for five years. The next year the trial court extended the period of community supervision by two years until August 2012. In May 2011, the State indicted appellant for aggravated assault with a deadly weapon, a brick, against his brother Kelly Monk (case no. 05-12-00326-CR), and moved to adjudicate appellant's guilt in the earlier aggravated assault case alleging appellant violated a condition of his community supervision by committing another offense. Appellant pleaded not guilty to the 2011 aggravated assault and not true to the violation of a condition of community supervision in the 2005 aggravated assault case. A jury convicted appellant in the 2011 aggravated assault case and assessed punishment at 60 years' imprisonment. Following the rendition of judgment in that case, the trial court adjudicated appellant's guilt in the earlier case and assessed punishment at 20 years' imprisonment. These appeals followed.

## SUFFICIENCY OF THE EVIDENCE

In case no. 05-12-00326-CR, the State charged appellant by indictment with intentionally, knowingly, and recklessly causing serious bodily injury to Kelly Monk, appellant's brother, by striking Kelly with a brick. The State alleged that the brick was a deadly weapon and that appellant was a member of Kelly's family and household. Appellant argues that the evidence is insufficient to support the jury's verdict.

### Standard of Review

We analyze a challenge to the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict and determining whether the jury rationally found the essential elements of the offense beyond a reasonable doubt.[1] *Wise v. State*, 364 S.W.3d 900, 903 (Tex.

---

[1] The State contends that appellant inadequately briefed this issue because he cited only the standard of review for factual sufficiency, which the Texas Court of Criminal Appeals rejected in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality opinion) (overruling

Crim. App. 2012). A jury is free to believe all, some, or none of the witnesses' testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). When the evidence is conflicting and jurors could resolve the evidence either way, we presume the jury resolved the conflicts in favor of their verdict. *See Brooks v. State*, 323 S.W.3d 893, 922 (Tex. Crim. App. 2010) (plurality opinion).

### *Applicable Law*

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). A person commits aggravated assault if the person commits assault, causes serious bodily injury to another, and uses or exhibits a deadly weapon during the commission of the assault. *Id*. § 22.02(a)(2).

### *The Evidence*

Kelly testified that on the day of the incident he may have watched sports for a while and had a beer or two, then he went to his nephew's barber shop to get a haircut. His younger brother, appellant, was there. Kelly asked his nephew for some money, and his nephew gave him $40. Kelly and appellant left the barber shop together in Kelly's truck, stopped to buy beer, and went to the neighborhood where they used to live. Their house was no longer there because it burned, but they sat and talked in Kelly's truck in front of the vacant lot. Kelly saw Charles Allen, who still lived in the neighborhood, sitting on a car nearby. At some point, appellant and Kelly's conversation got louder. Kelly said appellant asked him for money several times, and Kelly refused because he needed the money to pay bills. The conversation was loud enough for the neighbors across the street to hear. Kelly told appellant to get out of the truck because Kelly

---

*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)). We address the issue in the interest of justice. *See Butler v. State*, 872 S.W.2d 227, 237 (Tex. Crim. App. 1994).

had to leave. Appellant did not get out, so Kelly got out of the truck, walked around to the passenger door, opened the door, and asked appellant to get out of the truck. Appellant got out, and Kelly walked around the back of the truck toward the driver's side. He did not see anyone else in the area, just appellant and Allen. Kelly took two or three steps and then felt a heavy blow to the left side of his face. He woke up in a hospital. He said he did not have the $40, his watch, or his ring.

Photographs of Kelly in the hospital showed significant injuries to both sides of his face. Kelly testified that he was in the hospital for fourteen days, but the medical records show he was discharged after seven days. He testified that he sustained nerve damage in his face, hearing loss, memory loss, and blurred vision.

Charles Allen testified that he has known appellant and Kelly about five years and lived next door to them until their house burned. He said he is on disability and has been diagnosed with depression, bipolar disorder, and schizophrenia, and that he sometimes "see[s] people and hear[s] voices" when he does not take his medication. He explained his criminal history and said he committed those crimes when he was off his medications. Allen testified that he did not have any problems understanding what was going on or seeing and remembering things clearly and accurately.

Allen testified that he was sitting on the hood of his uncle's car when appellant and Kelly drove up in Kelly's truck. Allen was about three car lengths away. Kelly's truck windows were down and Allen could hear appellant and Kelly yelling and arguing about beer and money. Then he saw Kelly get out of the truck, walk around to the passenger side, open the door, and tell appellant to get out. Appellant got out. Allen saw Kelly walk around the front of the truck. He saw appellant get a brick from the vacant lot and hit Kelly from behind. Kelly fell onto the street.

Appellant dragged Kelly to the sidewalk and hit him more than five times in the head with the brick. Allen asked appellant what he was doing and appellant said "stay out of it, it's family business." Allen told appellant to stop and he was calling the police. Appellant stopped and said he was leaving to get some beer. Allen saw appellant reach into Kelly's pocket for money. A man named "Rick" walked up and drove Kelly's truck around the block to his house and gave the keys to Allen's aunt, Dorothy Allen, also known as Miss Louise. Allen said he could tell that both appellant and Kelly had been drinking.

Dorothy Allen testified that she was told people were fighting and she went outside to see what was happening. She saw appellant holding Kelly under the arms on the sidewalk, like he was trying to hold Kelly up. She said Kelly was bleeding out of his nose, his mouth and "this side over here was bleeding down his ear . . . ." She did not see anyone else at first, but then she saw "Richard" walking toward them. She did not see any blood on Richard's shirt. She went to the house to get water to pour on Kelly's face. Appellant was still there when she got back. Kelly was unconscious. Appellant laid Kelly down and left before the ambulance arrived. Appellant came back later for the keys to Kelly's truck, and she refused to give him the keys.

Dr. James Carroll testified that he is the head of the trauma team at Baylor Medical Center and was the responding physician on Kelly's case. He said Kelly had a moderate head injury, a laceration above the left eyebrow, "lots of swelling and abrasions, more on the right side," and multiple facial fractures that had to be repaired surgically. Dr. Carroll testified that injuries like Kelly's could result in hearing loss, memory loss, facial nerve damage, blurred vision, and change in behavior. He said based on the injuries he observed in Kelly, a brick would qualify as a deadly weapon.

Appellant testified in his defense and gave a different account of the events of that day. He said he and Kelly were not at the barber shop together; he said they went to another brother's house around noon where Kelly and the other brother drank cognac and beer for about an hour, and Kelly borrowed $50 from that other brother. Then appellant and Kelly met later that evening at the vacant lot where they used to live. They sat in Kelly's truck and each drank a 24-ounce beer. Then two guys walked up and asked Kelly about money Kelly owed them. Appellant got out of the truck and went to the vacant lot to use the restroom. He saw one of the guys hit Kelly with a brick and take off running. Kelly was still in the truck when he was hit. Appellant said he did not know the guys and had never seen them before. He said "Ricky" was not one of the two guys, but that Ricky was there and saw the incident. He also said he knew Charles Allen, and Allen may have been one of the guys. Appellant said the hit was not that severe, and Kelly "was still talking and still trashing the guy." Appellant said Kelly was hit once with the brick and then fell to the concrete, and that it was Kelly's fault that he got hit with a brick.

Appellant testified that he held Kelly in his arms and asked Miss Louise to get some water and call the ambulance. He said "[a]ll I did was show brotherly love to help him. I would never hurt my brother in that situation." He admitted, however, that he spent three years in prison and five years on probation in two separate aggravated assaults of another brother. Appellant admitted that he left Kelly before the ambulance arrived; he said he had to borrow money from a friend. He said he went back to get the keys to Kelly's truck, but Miss Louise refused to give the keys to him.

Appellant also said he is right-handed and could not have hit Kelly with his left hand because he had a finger on the left hand amputated a couple of months before this incident.

Appellant explained that he lost his finger when he was playing a game called "who point the finger in your face we'll knock it off" and the other guy bit his finger off.

## *Discussion*

Appellant argues that the evidence is insufficient to convict him. He argues that Kelly did not see who hit him, and Kelly's testimony about what happened was unreliable and conflicting because of his memory loss. Appellant argues that Allen's testimony was also unreliable because he suffered from depression, bipolar disorder, and schizophrenia and "sees people." And appellant argues that he could not have held a brick in his left hand because of his finger loss.

We conclude that the evidence is sufficient to support the conviction. Allen, an eyewitness who had known appellant and Kelly for years, saw and heard appellant and Kelly arguing over beer and money. Allen saw them get out of the truck and saw appellant hit Kelly in the head with a brick. Allen said he, appellant, and Kelly were the only ones in the area when the incident occurred. Allen and his aunt testified that Richard (Rick, Ricky) walked up after the incident, drove Kelly's truck around the block, and gave the keys to Allen's aunt.

On the other hand, appellant said two strange men approached Kelly about money Kelly owed them. Appellant said he got out of the truck and went to the vacant lot to use the restroom, and that is when he saw one of those men hit Kelly in the head with a brick while Kelly was sitting in the truck. Appellant said Ricky was already there and saw the incident. At one point appellant said he did not know the two men and had never seen them before, but then he said Allen could have been one of the two men.

The jury was free to believe all, none, or any portion of any of the witnesses' testimony. *See Wesbrook*, 29 S.W.3d at 111. Because the evidence supports conflicting views, we presume the jury resolved the conflicts in favor of their verdict. *See Brooks*, 323 S.W.3d at 922. Viewed

in the appropriate light, we conclude that the evidence was sufficient to support the conviction. We resolve appellant's first issue in case no. 05-12-00326-CR against him.

In his sole issue in case no. 05-12-00325-CR, appellant argues that the trial court's finding that he violated the conditions of probation by committing another offense must be set aside because the evidence is insufficient to show he committed aggravated assault against Kelly. Having found the evidence sufficient to support the conviction, we resolve this issue against appellant.

## JURY CHARGE

Appellant also complains about two alleged errors in the jury charge in case no. 05-12-00326-CR. He first complains that the guilt/innocence charge did not define certain terms, and he next complains that the punishment charge did not instruct the jury on the proper range of punishment.

Appellant concedes that he did not object to the jury charge. Consequently, he must show he suffered egregious harm as the result of any error. *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh'g). That is, appellant must show that the error deprived him of a fair and impartial trial. *Id.* at 172. We assess harm in light of the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; the arguments of counsel; and any other relevant information revealed by the record as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

### *Failure to Define Terms*

Appellant argues that the charge should have defined "family" and "household." He argues that "[t]he purpose for alleging the family relationship in the indictment was to increase the available punishment range" and the "effect of alleging the family and household relationship

resulted in an enhanced punishment, increasing the offense to a first degree." Appellant argues that he suffered egregious harm because the allegation increased the punishment range from a second-degree felony to a first-degree felony.

The trial court submitted two charges: one in the guilt/innocence phase and one in the punishment phase. In the charge on guilt/innocence, the jury was asked whether appellant committed aggravated assault and whether appellant was a member of Kelly's family or household at the time. The charge did not define "family" or "household." As appellant concedes, the purpose of alleging family violence is to increase the range of punishment. *See* TEX. PENAL CODE ANN. § 22.02(b). But appellant does not explain why the failure to define those terms in the charge on guilt/innocence caused him egregious harm. Additionally, the court's punishment charge did define those terms, and appellant does not complain about those definitions or the punishment charge itself.

The punishment charge also authorized the jury to convict appellant as a repeat and habitual offender with a minimum punishment of 25 years if it found the allegations in the enhancement paragraphs true. *See id*. § 12.42(d) (West Supp. 2012). The jury found the allegations true. Consequently, the punishment range that applied to appellant was that for a repeat and habitual offender, whether or not the jury also concluded that appellant was a member of Kelly's family or household.

Under these circumstances, we cannot conclude that appellant suffered egregious harm because the trial court did not define "family" and "household" in the guilt/innocence charge. We resolve issue two against appellant.

*Failure to Instruct on Full Range of Punishment*

In his third issue, appellant argues that the punishment charge did not instruct the jury on the proper range of punishment if the jury found the allegations in the first and second enhancement paragraphs true because it instructed the jury that the applicable punishment was life and did not allow the jury to assess a term of years less than life. The State argues that the charge in the clerk's record, upon which appellant's argument depends, is missing a page. It argues that the reporter's record contains the entire punishment charge as read to the jury. We agree with the State.

The clerk's record contains a punishment charge that skips from page three to page five. Page three of the punishment charge ends in mid-sentence, and page five does not complete the sentence from page three. Clearly the mistake was not a page numbering mistake, but rather the clerk's record is missing page four. However, when the trial court read the entire punishment charge to the jury, the court reporter recorded the reading verbatim. The reporter's record contains that verbatim transcript and it shows that the trial court read the full range of punishment to the jury.

Additionally, the punishment charge contains eight different verdict forms depending on whether the jury made a finding of family violence and found one, both, or none of the allegations in the enhancement paragraphs true. None of those eight verdict forms gave the jury the option of imposing only a sentence of life. Instead, they all included the option of imposing a sentence of less than life.

We conclude that appellant has not shown the charge contained error or, if it did, he was egregiously harmed. We resolve issue three in case no. 05-12-00326-CR against appellant.

## STATE'S CROSS-APPEAL ISSUE

In a cross-appeal issue, the State argues that the judgment in case no. 05-12-00326-CR should be reformed to reflect the jury's finding that appellant used a deadly weapon during the commission of the offense. We agree.

The Texas Code of Criminal Procedure requires the trial court to enter a deadly weapon finding in its judgment when the jury makes an affirmative finding of the use of a deadly weapon. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2012). An affirmative finding is made when the indictment alleges that a deadly weapon was used and the jury finds the defendant guilty "as charged in the indictment." *See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).

The indictment charged appellant with aggravated assault and the use of a deadly weapon, a brick, during the commission of the offense. The jury found appellant guilty of aggravated assault "as charged in the indictment." Consequently, we modify the judgment in case no. 05-12-00326-CR to delete the "N/A" under "Findings on Deadly Weapon" and insert "Yes."

## CONCLUSION

We affirm the trial court's judgment in case no. 05-12-00325-CR. We modify the trial court's judgment in case no. 05-12-00326-CR to reflect a finding of the use of a deadly weapon and affirm as modified.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX R. APP. P. 47
120325F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CEDRIC MONK, Appellant

No. 05-12-00325-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F05-50150-J.
Opinion delivered by Justice Lang-Miers, Justices Murphy and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 9, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CEDRIC MONK, Appellant

No. 05-12-00326-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F11-55331-J.
Opinion delivered by Justice Lang-Miers, Justices Murphy and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "N/A" under "Findings on Deadly Weapon" is deleted and "Yes" is inserted.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered April 9, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

–13–